Albert N. Kennedy, OSB No. 821429 (Lead Attorney)
    Direct Dial:  503.802.2013
    Facsimile:   503.972.3713
    E-Mail:      albert.kennedy@tonkon.com
Timothy J. Conway, OSB No. 851752
    Direct Dial:  (503) 802-2027
    Facsimile:   (503) 972-3727
    E-Mail:      tim.conway@tonkon.com
Michael W. Fletcher, OSB No. 010448
    Direct Dial:  (503) 802-2169
    Facsimile:   (503) 972-3867
    E-Mail:      michael.fletcher@tonkon.com
Ava L. Schoen, OSB No. 044072
    Direct Dial:  (503) 802-2143
    Facsimile:   (503) 972-3843
    E-Mail:      ava.schoen@tonkon.com
TONKON TORP LLP
888 SW Fifth Avenue, Suite 1600
Portland, OR 97204-2099

Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Wall to Wall Tile & Stone-Oregon LLC, an Oregon limited liability company,<br><br>            Debtor. | Case No. 19-32599-dwh11 |
| In re<br><br>Wall to Wall Tile & Stone, LLC, a Washington limited liability company,<br><br>            Debtor. | Case No. 19-32600-dwh11 |
| In re<br><br>Wall to Wall Tile & Stone-Idaho LLC, an Idaho limited liability company,<br><br>            Debtor. | Case No. 19-32603-dwh11<br><br>**DECLARATION OF JAMES KELLER IN SUPPORT OF FIRST DAY PLEADINGS** |

**Page 1 of 10** -    DECLARATION OF JAMES KELLER IN SUPPORT OF FIRST DAY PLEADINGS

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-32599-dwh11    Doc 18    Filed 07/16/19

I, James Keller, hereby declare that the following statements are true to the best of my knowledge and belief, that I am competent to testify to the matters stated herein, and that I understand they are made for use as evidence in court and are subject to penalty for perjury.

1. On July 16, 2019 (the "Petition Date"), Debtors and Debtors-in-Possession Wall to Wall Tile & Stone-Oregon LLC, an Oregon limited liability company ("Wall to Wall Oregon"), Wall to Wall Tile & Stone, LLC, a Washington limited liability company ("Wall to Wall Washington"), and Wall to Wall Tile & Stone-Idaho LLC, an Idaho limited liability company ("Wall to Wall Idaho") (collectively, "Debtors" or "Wall to Wall") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code.

2. I am a Certified Public Accountant and Certified Fraud Examiner. I have a Bachelor of Science in both Psychology and Biology and a Masters of Taxation from Portland State University.

3. I am a Project Manager with Edward Hostmann Inc. ("EHI"), which was hired to provide financial consulting services for Debtors starting on June 13, 2019. EHI provides financial distress management and advisory services to lenders, financial institutions, and companies. Our team has experience in all areas of business strategy, finance, and organizational management.

4. I began my career with PriceWaterhouse, and subsequently held senior financial executive roles with large privately-held companies in various industries, including chief executive officer, chief operating officer, chief financial officer, and corporate controller for companies with annual sales ranging from $6 million to $250 million.

5. I have provided receivership project management services for many engagements involving workouts, restructurings, liquidations, and receiverships. My project management skills include operational management and assessment, safeguarding and maximizing asset value, and personnel management in crisis management situations.

Page 2 of 10 - DECLARATION OF JAMES KELLER IN SUPPORT OF FIRST DAY PLEADINGS

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-32599-dwh11    Doc 18    Filed 07/16/19

6. I have been working closely with Wall to Wall's senior leadership since EHI was hired to provide financial services to Wall to Wall. I submit this declaration to assist the Court and other parties-in-interest in understanding the circumstances that compelled the commencement of these Chapter 11 cases, and in support of Debtors' voluntary Chapter 11 petitions and the various motions and applications Debtors filed with the Court in support of the issuance and entry of first day orders. Except as otherwise indicated, all facts set forth in this declaration are based on my personal knowledge; my review of relevant documents; or my opinion based upon my experience, knowledge, and information concerning Debtors' operations and financial affairs. If called upon to testify, I would testify to the facts set forth in this declaration. I am authorized to submit this declaration.

7. Promptly after filing their Chapter 11 petitions, Debtors filed certain applications, motions, and proposed orders (the "First Day Motions"). Debtors request that Orders be entered on each of the First Day Motions, as each constitutes a critical element in achieving a successful reorganization of Debtors for the benefit of all parties-in-interest.

## BACKGROUND OF WALL TO WALL

8. Wall to Wall was founded in 2008 in Vancouver, Washington by Tyler Kruckenberg with four employees. Mr. Kruckenberg had 20 years of experience in the stone countertop supply and fabrication industry. He envisioned a large scale advanced manufacturer that could deliver fully integrated solutions offering better selection, price, and service to the market.

9. Wall to Wall has grown to approximately 250 employees and annual sales exceeding $30 million. Wall to Wall's sales are concentrated in granite and quartz countertops. Marble and exotic stones, including soapstone, slate, and limestone are also offered, as are custom stone vanity tops, backsplashes, floor tiles, and other interior surfaces. To complement its array of stone countertop products, Wall to Wall offers several value-added services,

Page 3 of 10 - DECLARATION OF JAMES KELLER IN SUPPORT OF FIRST DAY PLEADINGS

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-32599-dwh11    Doc 18    Filed 07/16/19

1 including design, project layout, home visitation for digital measurement, customized cutting, and hand finished home installation.

10. The companies operate out of five locations. In Vancouver, Washington, there are two locations: a 44,000 square foot facility that houses distribution, design, engineering, manufacturing, and warehousing and a separate 5,664 square foot corporate office and public showroom. In Boise, Idaho, there is a 37,000 square foot facility that houses manufacturing, distribution, and a public showroom. A public showroom is also located in Kent, Washington and a private showroom for contractors is located in Bend, Oregon.

**EVENTS LEADING TO BANKRUPTCY**

11. Wall to Wall filed for Chapter 11 protection as a result of the entry of a $4,500,000 judgment filed against it by a single creditor. Wall to Wall is unable to pay the judgment.

**CURRENT OPERATIONS**

12. As set forth above, Debtors are comprised of three entities. The entities' financial and business affairs are closely related. For example, Debtors' banking, administrative, and operational services are shared collectively among the three entities and their common senior management.

13. Wall to Wall sells and distributes stone countertops to hundreds of customers throughout Oregon, Washington, and Idaho. The company sells both directly to customers and indirectly thorough distribution partners. Indirect customers include wholesale flooring providers and cabinet companies which serve the major residential and multi-family builders in the region. Direct customers include local and regional home and multi-family builders, contractors, remodelers, and national home centers and retail flooring providers. Wall to Wall also has significant contracts with major retailers pursuant to which Wall to Wall completes the fabrication and installation of materials purchased by those retailers.

Page 4 of 10 - DECLARATION OF JAMES KELLER IN SUPPORT OF FIRST DAY PLEADINGS

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-32599-dwh11    Doc 18    Filed 07/16/19

14. During the course of its Chapter 11 case, Wall to Wall intends to perform its existing commercial and residential contracts and honor its warranty obligations.

**DEBT STRUCTURE**

15. Debtors have a revolving line of credit from Wells Fargo Bank, National Association ("Wells Fargo") (the "Line of Credit"), evidenced, in part, by a Credit Agreement dated August 21, 2018 in the principal amount of $8,000,000 (the "Credit Agreement"). The present balance on the Line of Credit is approximately $6,500,000. The Line of Credit is secured by a security interest in and to all of Debtors' presently owned and thereafter acquired inventory, accounts, general intangibles, rights to payment, and equipment, together with all proceeds of the foregoing (as more fully described in a Security Agreement: Business Assets dated as of August 21, 2018, the "Wells Fargo Collateral").

16. On or about August 30, 2018, Wells Fargo Equipment Finance, Inc. (hereinafter referred to as "WFEFI") extended a loan (the "WFEFI Loan") to Debtors, evidenced, in part, by that certain Master Loan and Security Agreement (the "Loan Agreement") and a Loan Schedule to Master Loan and Security Agreement, both dated as of August 30, 2018, in the stated principal amount of $2,493,831.78. On or about April 30, 2019, WFEFI advanced additional amounts on the WFEFI Loan pursuant to a second Loan Schedule to Master Loan and Security Agreement dated as of April 30, 2019, in the stated principal amount of $309,433.45. The present balance owed to WFEFI is approximately $2,300,000.

17. Debtors' obligations under the WFEFI Loan are secured by a security interest in and to all of Debtors' presently owned and thereafter acquired inventory, accounts, general intangibles, rights to payment, and equipment, together will all products and proceeds of the foregoing (as more fully described in a Security Agreement dated as of August 30, 2018, the "WFEFI Collateral").

Page 5 of 10 - DECLARATION OF JAMES KELLER IN SUPPORT OF FIRST DAY PLEADINGS

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-32599-dwh11    Doc 18    Filed 07/16/19

18. All of Debtors' cash, including, but not limited to, cash proceeds from the collection of customer contracts and accounts receivable ("Cash Collateral"), is cash collateral of Wells Fargo and WFEFI.

19. To preserve and maintain the assets of this bankruptcy estate and to preserve the value of Debtors as a going concern, Debtors require the use of Wells Fargo's cash collateral.

20. Debtors have prepared a 13-week cash collateral budget (attached to Debtors' Motion for Authority to Use Cash Collateral) (the "Budget") setting forth the amount necessary for Debtors' continued operations prior to the final hearing and during such 13-week period.

21. Without the use of cash collateral, Debtors have insufficient funds to meet their expenses and other obligations set forth in the Budget. Debtors have an immediate need to use Wells Fargo's cash collateral to pay their vendors, employees, benefit plans, and ongoing operating expenses.

22. It is in the best interest of Debtors, their creditors, and their estates for Debtors to use Wells Fargo's cash collateral because the use of cash collateral will allow the continued operation of Debtors as a going concern, will maximize the likelihood of reorganization, and will maximize the recovery to all creditors.

23. To provide adequate protection for the use by Debtors of Wells Fargo's cash collateral, Debtors propose that Wells Fargo (a) be granted a replacement security interest in and lien upon Debtors' assets generated or acquired from and after the Petition Date of the same category, kind, character, and description as were subject to Wells Fargo's lien on the Petition Date; and (b) be paid adequate protection payments as set forth in the Budget. The adequate protection granted to Wells Fargo will not enhance or improve the position of Wells Fargo.

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

24. Debtors require the immediate use of Wells Fargo's Cash Collateral to minimize disruption to, and avoid termination of, their operations, and thereby avoid immediate and irreparable harm to their business.

**POSTPETITION FINANCING**

25. Debtors have filed a motion seeking authority to obtain credit and incur debt from Baffco Enterprises, LLC ("Baffco"). Baffco has agreed to make optional advances in amounts totaling up to $2,000,000.

26. Debtors' immediate known needs are set forth in the Budget attached to Debtor's Motion for Authority to Use Cash Collateral. Debtors also need to be ready to meet additional unexpected needs and business requirements as they may arise. As set forth in the Budget, Debtors' cash flow is such that additional funds may be needed from time to time in order to provide adequate working capital. Although Debtors expect Wells Fargo to allow the use of its cash collateral, Wells Fargo is not willing to advance additional funds. Debtors also anticipate that additional working capital may be needed to fund payment of goods received within 20 days of the Petition Date, if allowed, or to provide cash advance or other terms as may be necessary for Debtors to continue to acquire necessary materials in the course of their business operations. Further, funds are also needed to pay the administrative expenses associated with the Chapter 11 case and provide for any contingencies that may arise.

27. Debtors have an immediate need to obtain additional working capital in order to meet their obligations and operate their business. Without approval of Debtors' motion to obtain credit and incur debt from Baffco, Debtors will be unable to maintain and preserve their business operations and provide necessary and appropriate assurances to all vendors, suppliers, customers, and creditors that they will be able to maintain and preserve their assets and effectuate orderly and efficient reorganizations. If Debtors are unable to have sufficient funds available to provide such assurances, Debtors' ability to reorganize will be seriously jeopardized, to the substantial detriment of creditors, employees, and other parties-in-interest. Debtors are

unable to obtain adequate financing on equal or more favorable terms than those offered by Baffco.

28. Pursuant to Debtors' loan agreement with Baffco, Baffco has agreed to make optional advances in amounts totaling up to $2 million. Debtors anticipate that up to $1 million of that amount may be needed on an interim basis pending a final hearing on this Motion

29. Debtors believe the proposed terms and conditions in the loan agreement with Baffco are fair and equitable and in the best interest of Debtors' estates. An immediate need exists for Debtors to obtain credit in order to enable Debtors to operate their business pending a final hearing on the Motion and to avoid immediate and irreparable harm to Debtors, their estates, and their creditors.

30. In particular, and as discussed herein, Debtors intend to use Cash Collateral or post-petition loans to pay for (a) payroll, (b) goods received within 20 days of the Petition Date, (c) utility deposits, (d) stone and tile materials, and (e) general operating expenses.

**PREPETITION WAGES**

31. As set out above, Debtors employ approximately 250 employees.

32. Debtors have an average bi-weekly payroll of approximately $485,000 per pay period.

33. Debtors' employees are paid every other Friday. On July 12, 2019, employees were paid their wages for the pay period June 23, 2019 through July 6, 2019. Because the Petition Date is July 16, 2019, Debtors have incurred unpaid prepetition obligations for wages, salaries, expenses, commissions, and other employment compensation and benefits for the period July 7, 2019 to July 15, 2019.

34. The total amount Debtors are obligated to pay for accrued and unpaid prepetition wages, salaries, expenses, commissions, compensation, taxes, and benefits is approximately $303,481. No employee will be paid more than the $12,850 with the next payroll.

Page 8 of 10 - DECLARATION OF JAMES KELLER IN SUPPORT OF FIRST DAY PLEADINGS

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-32599-dwh11    Doc 18    Filed 07/16/19

## GOODS RECEIVED WITHIN 20 DAYS

35. Within 20 days immediately prior to the Petition Date, Debtors purchased and received a variety of inventory and other goods used in business operations ("503(b)(9) Claims").

36. The great majority of the suppliers of these goods ("503(b)(9) Claimants") are essential to Debtors operations. Debtors rely on these suppliers to frequently and timely deliver critical goods. Debtors estimate that approximately $750,000 was owing to these suppliers as of the Petition Date.

37. To ensure continued and timely delivery of goods critical to the operation of Debtors' business, and to help ensure that Debtors have access to post-petition trade credit, Debtors seek entry of an order authorizing, but not directing, Debtors to pay any undisputed 503(b)(9) Claims.

38. Payment of the 503(b)(9) Claims is necessary for Debtors to maintain their existing vendor relationships and preserve the going concern value of Debtors' estates.

39. The vast majority of 503(b)(9) Claimants provide goods that are critical to Debtors' ongoing operations. Any erosion in Debtors' relationships with their vendors may threaten Debtors' ability to keep their locations adequately supplied. Debtors cannot afford any material disruptions in obtaining goods from their vendors or present anything less than a business-as-usual appearance to the public.

40. Payment of the 503(b)(9) Claims is necessary to prevent immediate and irreparable damage to Debtors' business operations, going-concern value, and ability to reorganize.

## UTILITIES

41. In connection with the operation of its business, Debtors obtain telephone, electric, gas, water, and other utility services (collectively, "Utility Services") from numerous utility companies ("Utility Companies").

Page 9 of 10 - DECLARATION OF JAMES KELLER IN SUPPORT OF FIRST DAY PLEADINGS

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-32599-dwh11    Doc 18    Filed 07/16/19

42. Debtors have proposed to make adequate assurance payments to the Utility Companies consisting of a cash deposit upon request equal to one month of average service for each utility.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

This Declaration was executed on this 16th day of July, 2019.

*/s/ James Keller*
James Keller

040202/00003/10161350v1

Page 10 of 10 - DECLARATION OF JAMES KELLER IN SUPPORT OF FIRST DAY PLEADINGS

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-32599-dwh11    Doc 18    Filed 07/16/19